# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

IRA HARRIS,                      )
                            )
        **Plaintiff,**         )
                            )     **No. 1:15-cv-140 SNLJ**
        **vs.**              )
                            )
**GARY KEMPKER, et al.,**     )
                            )
        **Defendant.**       )

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion to dismiss plaintiff's third amended complaint (#131). Defendants have not filed a reply memorandum in support of their motion, and the time for doing so has passed.

## I.   Background

Plaintiff Ira Harris is incarcerated in the Missouri Department of Corrections ("MDOC"). Plaintiff, through his court-appointed attorneys, filed a third amended complaint (#126) on January 24, 2018. The complaint names as defendants several corrections-related individuals including former MDOC director George Lombardi, current MDOC director Anne Precythe, Eastern Reception Diagnostic Center ("ERDC") warden Troy Steele, Southeast Correctional Center ("SECC") warden Ian Wallace, and an unknown correctional officer ("Unknown Null") at Potosi Correctional Center ("PCC"). The complaint also names several health-related individuals and entities including the MDOC healthcare contractor Corizon, LLC ("Corizon"), SECC health

1

services administrator Brandi Juden, SECC Institutional Chief of Mental Health Cynthia Reese, medical director at SECC John Eppolito, M.D., SECC nurse practitioner Nina Hill, and PCC medical director William McKinney, M.D..

The following allegations are considered true for the purposes of the instant motion to dismiss.

### A.    Mental Health Allegations

While committed to the custody of MDMH at Fulton State Hospital in 2002, plaintiff was diagnosed with schizophrenia. After plaintiff's physician tried multiple treatment options, plaintiff's physician determined that the best treatment for plaintiff was the drug Geodon. Plaintiff "suffered no ill side effects and his schizophrenia was properly managed" while on Geodon. (#126 at ¶ 21.) In 2003, plaintiff was transferred to MDOC, where he remained on Geodon intermittently until approximately 2012.

In 2012, plaintiff was taken off Geodon. No reason was provided to him initially, and, when he inquired, a non-party doctor and defendant Reese told him that "Jefferson City" had determined the drug was too expensive and MDOC and Corizon wanted to try different treatments. No medical reason was provided to plaintiff. Plaintiff tried some new medications, but sometimes he was provided with no medication at all because it was out of stock. Sometimes he went for days with no mental health medication.

While plaintiff was taking these different medications, plaintiff continued to see psychiatrists, but his appointments were limited to 15 minutes per MDOC and Corizon policies which were instituted and enforced by defendants Lombardi, Steele, Wallace, Reese, and Precythe. Plaintiff suffered side effects from the different drugs including

upset stomach, lethargy, and headaches.  In addition, plaintiff alleges the new drugs were less effective at managing his schizophrenia symptoms.  Plaintiff eventually refused to take the new drugs due to their side effects and ineffectiveness.  He was then not provided with Geodon nor any other schizophrenia medication for approximately one year while he was placed in administrative segregation at PCC and SECC (it is unclear whether plaintiff was placed in administrative segregation due to his refusal to take the non-Geodon medications or for some other reason).

During that time, plaintiff wrote letters to MDOC and Corizon officials including defendants Reese and Wallace.  He also filed numerous grievances and medical service requests indicating that he required mental health medication.

After plaintiff's arrival at SECC, non-party Dr. Gowin submitted a request that plaintiff be placed on Geodon.  Defendant Reese denied the request because it was too expensive.  Around that same time, plaintiff suffered a "self-mutilation incident in which he bit his arm" and attempted to commit suicide.  (#126 at ¶ 41.)  Plaintiff was not taking any medication at that time. Following that incident, plaintiff was prescribed Loxapine. For three and a half years, and for nine months after Dr. Gowin's evaluation and request, plaintiff was not provided with Geodon for his schizophrenia.  Plaintiff was eventually prescribed Geodon in late 2015 and remains on Geodon today.

## B.    Fistula Allegations

Plaintiff underwent a colonoscopy around November 10, 2014.  Following the procedure, he developed a large, hard lump near his anus.  Plaintiff was seen by defendants McKinney, Eppolito, and Hill.  During one of those visits, plaintiff alleges he

was threatened with a gun by defendant Unknown Null; plaintiff further alleges that defendant Null pulled out his gun and shoved it into plaintiff's side.

Defendants McKinney, Eppolito, and Hill allegedly determined that the lump was either ran abscess or a hemorrhoid and prescribed antibacterial and hemorrhoid ointment. The lump did not improve for nearly a year, but those defendants continued the same course of treatment. Plaintiff experienced severe pain, swelling, bleeding, and difficulty sitting during that time.

While plaintiff was housed at SECC and ERDC, plaintiff and his attorney sent letters and other communications to defendants Juden, Wallace, and Steele, advising them that plaintiff's medical needs were being ignored. Defendant Juden responded inadequately to plaintiff's first letter, so plaintiff sent two more letters to her which were ignored. Defendants Wallace and Steele never personally responded to the communications. However, defendant Wallace did refer the communications to Bill Stange, who referred them to defendant Juden for a response. Defendant Juden did not respond to those communications.

After nearly two years of ineffective treatments with no improvements to plaintiff's condition, a nurse finally asked a doctor who happened to be onsite that day to examine plaintiff. The doctor recognized the lump immediately as a fistula and not hemorrhoids. The doctor ordered immediate surgery. Two months later, the fistula was drained and plaintiff's condition improved.

Plaintiff filed this lawsuit. Count I is for failure to provide medical care for plaintiff's schizophrenia. He brings Count I against defendants Corizon, Lombardi,

Precythe, Reese, Wallace, and Steele.  Count II is for failure to provide medical care for plaintiff's anal fistula.  Count II is against defendants Corizon, Eppolito, Hill, Juden, McKinney, Wallace, Steele, Lombardi, and Null.  Count III is a state law battery claim against defendant Unknown Null for intentionally pulling his gun and pushing into plaintiff's side.  Count IV is for an injunction against defendants Precythe, Stringer, and Corizon.  Plaintiff seeks an injunction requiring the defendants instruct their agents to perform a full physical and mental health screen of plaintiff.

Defendants Lombardi, Precythe, Steele, Wallace, and Stringer have moved to dismiss.

## II.    Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity."  *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).  "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content. . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party."  *Id*. (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir.

5

2005)).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster.  *Iqbal*, 556 U.S. at 678.

## III.    Discussion

Defendants' arguments for dismissal are discussed in turn below.

### A.    Official Capacity Claims

Counts I and II have been brought against defendants Lombardi, Precythe, Steele, and Wallace in their individual and official capacities.  Plaintiff concedes that defendants are entitled to dismissal of Counts I and II against those defendants in their official capacities because the they are entitled to immunity for such claims under the Eleventh Amendment (#133 at 4).  *See Morstad v. Dep't of Corr. and Rehab.*, 147 F.3d 741, 743 (8th Cir. 1998).

### B.    Respondeat Superior

Next, defendants Lombardi, Precythe, Steele, Wallace, and Stringer contend they are entitled to dismissal of claims against them to the extent those claims are based on a respondeat superior theory of liability.  Indeed, it is well-settled that respondeat superior cannot form a basis for liability under 42 U.S.C. § 1983.  *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010).  "Supervisors can, however, incur liability for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices."  *Id.* (internal quotation omitted).  In addition, "[e]ven if a supervisor is not involved in day-to-day operations, his personal involvement may be found if he is involved in 'creating, applying, or interpreting a policy' that gives rise to unconstitutional conditions."  *Jackson*

*v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (quoting *Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir. 2009)).

Each of the defendants is alleged to have personally involved in alleged constitutional deprivations. Defendants Lombardi and Precythe, the former and current directors of MDOC, and defendants Steele (ERDC warden) and Wallace (SECC warden), are alleged to have implemented and enforced a policy limiting plaintiff's mental health and medical appointments to 15 minutes. (#126 ¶¶ 73, 77(f).) Plaintiff also alleges that defendant Lombardi was one of the individuals responsible for removing plaintiff from his prescribed mental health medication because it was too expensive.[1] (*Id.* ¶ 72.) Plaintiff also alleges that he and his attorney sent letters to defendants Steele and Wallace regarding his unconstitutional treatment but that they either failed to respond altogether or failed to respond adequately. (*Id.* ¶¶ 56-60, 77(c).)

Although defendants are correct that prison supervisors cannot be held liable under the doctrine of respondeat superior, plaintiff does not seek to hold these defendants liable based on agency principles or for actions taken by subordinates. Rather, plaintiff alleges that these defendants removed him from his prescribed mental health medication because it was too expensive, implemented and enforced a policy limiting his appointments to 15 minutes, and/or failed to respond to or to adequately respond to repeated communications from plaintiff indicating that his serious medical needs were being ignored. Plaintiff has effectively pleaded the defendants' personal involvement.

---

[1] The Court notes that the parties have not raised the issue of whether a prisoner is entitled to a particular medication regardless of the cost.

*See Langford*, 614 F.3d at 460; *Jackson*, 747 F.3d at 544; *Prosser v. Nagaldinne*, 4:09CV2117 HEA, 2011 WL 250999, at \*10 (E.D. Mo. Jan. 26, 2011).

### C.    Medical Claims

Next, defendants argue that plaintiff's medical neglect claims fail because none of the defendants actually rendered any medical care to plaintiff personally, much less did they have any subjective knowledge of his conditions. It is true that, to prevail on his claim based on medical treatment in prison, the law requires plaintiff to show that he had an objectively serious medical need and that prison officials subjectively knew of, but deliberately disregarded, that need. *See Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). At the motion to dismiss stage, however, the Court accepts as true the plaintiff's allegations. *Cole*, 599 F.3d at 861. Here, plaintiff has alleged that defendants were subjectively aware of plaintiff's serious medical needs. Plaintiff alleged defendant Lombardi removed him from his prescribed schizophrenia medication because it was too expensive --- Lombardi would have known that the medication was for schizophrenia. *See Estelle*, 429 U.S. at 104-05 ("[deliberate indifference is shown by] intentionally interfering with the treatment once prescribed."). In addition, plaintiff alleges the defendants were involved in the creation and implementation of the policy limiting plaintiff's medical appointments to 15 minutes. Plaintiff contends that such a limitation necessarily impairs the ability of medical professionals to properly diagnose and treat inmates including plaintiff. As discussed above, the supervisory prison officials may be liable under this theory. With respect to defendants Steele and Wallace and their involvement in Count II's allegations, plaintiff also alleges that they were specifically

8

advised of his unconstitutional medical care and took no action. Plaintiff has met the pleading threshold for alleging that the defendants were subjectively aware of the plaintiff's medical needs.

In addition, defendants seek dismissal of plaintiff's Count II --- the claim related to plaintiff's anal fistula --- on the basis that plaintiff has alleged no more than medical malpractice and not deliberate indifference to a serious medical need. Mere negligence or medical malpractice does not rise to the level of a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Plaintiff does not allege a mere misdiagnosis. Rather, plaintiff alleges that he was treated for the wrong condition for more than a year with no improvement in his serious pain or other symptoms. That is not mere negligence. Defendants suggest that "absent evidence that the care provided by medical staff was so poor that even a layperson must have recognized its inadequacy" (#132 at 6, citing *Krout v. Goemmer*, 583 F.3d 557, 569 (8th Cir. 2009)), they cannot be held liable. The Court finds that plaintiff has pleaded such a case. Plaintiff alleges he was treated for "hemorrhoids" for more than a year with no improvement and continued pain and other symptoms. Even a layperson would determine that such treatment was inadequate.

### D.    Qualified Immunity

Qualified immunity protects state officials from individual civil liability when "a reasonable officer could have believed [the challenged act] to be lawful, in light of clearly established law and the information the [defendant]s possessed." *Anderson v. Creighton*, 483 U.S. 635 (1987). The analysis involves two steps:

> First, the court must see if a deprivation of constitutional magnitude has been alleged. If so, the court must determine if that right was so clearly established that a reasonable public official would have known his or her conduct violated the Constitution at the time of the act.

*Weiler v. Purkett*, 137 F.3d 1047, 1050 (8th Cir. 1998). Defendants contend that plaintiff has not alleged facts sufficient to show that defendants violated plaintiff's eighth Amendment rights. In particular, they assert "it is not clear that a reasonable person in the position of the defendants would have understood the actions to be a violation of Plaintiff's constitutional rights." (#132 at 8.) Qualified immunity is an affirmative defense, and it will be upheld on a Rule 12(b)(6) motion only where immunity is established on the face of the complaint. *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996). Thus, plaintiff must allege in his complaint "the violation of a constitutional right that was clearly established at the time of the alleged violation." *Id.* Plaintiff has clearly alleged violation of his Eighth Amendment right to have his serious medical needs not be treated with deliberate indifference. Plaintiffs are alleged to have interfered with this right. The motion to dismiss on qualified immunity grounds is therefore denied.

## E.    Injunctive Relief

Defendants argue that plaintiff's request for injunctive relief should be denied. In so arguing, defendants note that a "mandatory injunction should issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of <u>preliminary</u> relief.'" (#132 at 8 (quoting *Tom Doherty Associates, Inc. v. Saban Entm't, Inc*., 60 F.3d 27, 34 (2d Cir. 1995) (emphasis added).) It thus appears that defendants mistakenly believe plaintiff is seeking a

preliminary injunction.  Plaintiff, instead, seeks an injunction as part of the remedies

sought by his lawsuit.  He has not moved for nor does he appear to seek in his complaint

a preliminary injunction that would require the weighing of factors discussed by

defendants in their motion.

## IV.     Conclusion

The defendants' motion to dismiss will be denied in part and granted in part.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss (#131) is
GRANTED in part and DENIED in part.

**IT IS FURTHER ORDERED** that Counts I and II are dismissed as to defendants
Lombardi, Precythe, Steele, and Wallace in their official capacities only.

**IT IS FINALLY ORDERED** that defendants Lombardi, Precythe, Steele, and
Wallace's motion to dismiss (#111) and the subsequently-dismissed parties' motion to
dismiss (#113), both filed November 13, 2017, are DENIED as moot.


Dated this __15th__ day of June, 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE